IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MELINDA R. FISHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-0512-CV-W-DGK |
| | ) | |
| WAL-MART STORES, INC., et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING SUMMARY JUDGMENT

This case arises out of Plaintiff Melinda Fisher's ("Fisher") arrest at a Wal-Mart store while in possession of counterfeit money orders. Plaintiff's First Amended Complaint ("the Complaint") alleges false imprisonment, slander, intentional infliction of emotional distress, and malicious prosecution against Defendants' Wal-Mart Stores East, L.P. and Wal-Mart Stores, Inc. (collectively "Wal-Mart Defendants" or "Wal-Mart"). The Complaint also asserts a section 1983 claim for unlawful arrest against the Raymore police officers ("Police Defendants") who arrested her.

Pending before the Court is Wal-Mart's Motion for Summary Judgment (Doc. 87), Wal-Mart's Suggestions in Support (Doc. 88), Plaintiff's Suggestions in Opposition (Doc. 98), Wal-Mart's Reply (Doc. 100), Plaintiff's Motion for Leave to File Supplemental Suggestions (Doc. 119), Plaintiff's proposed Supplemental Suggestions (Doc. 118), and Wal-Mart's Suggestions in Opposition to Plaintiff's Motion for Leave to File Supplemental Suggestions (Doc. 124). The Court GRANTS Plaintiff leave to file the supplemental suggestions (Doc. 118).

Also pending is Police Defendants' Motion for Summary Judgment (Doc. 103), their Suggestions in Support (Doc. 104), Plaintiff's Suggestions in Opposition (Doc. 108), Plaintiff's

Supplemental Response (Doc. 110), Police Defendants' Reply (Doc. 117), and Police Defendants' Motion for Leave to File Supplemental Suggestions (Doc. 125).

For the following reasons the summary judgment motions (Doc. 87, 103) are GRANTED. Police Defendants' Motion for Leave to File Supplemental Suggestions (Doc. 125) is DENIED.

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

**Facts**

Viewing the evidence in the light most favorable to the Plaintiff, for purposes of resolving the pending motion the Court finds the facts to be as follows. Controverted facts,[1] facts immaterial to the resolution of the pending motion, facts not properly supported by the record, and legal conclusions or argument offered as a statement of fact,[2] have been omitted.[3]

Defendant Wal-Mart Stores East, LP is a limited partnership. Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas. The incident described in the Complaint occurred at Wal-Mart store number 319 which is located in Raymore, Missouri, and operated by Wal-Mart Stores East, LP.

Around January 9, 2008, Wal-Mart associates and the Raymore Police Department became aware of a fraudulent scheme in which customers would present counterfeit money orders in exchange for payment at the Wal-Mart customer service desk.

Also on or about January 9 UPS delivered four counterfeit $500 Wal-Mart moneygram money orders to Plaintiff Melinda Fisher, a thirty year-old African-American woman, at her Belton home. Each $500 money order was made payable to Melinda Fisher by a Christine Shaw. Fisher does not know a Christine Shaw, has never met a Christine Shaw, and has never talked to a Christine Shaw on the phone. That same day Fisher also received a $100 Wal-Mart moneygram money order from Clarene Banks, the grandmother of Fisher's nephew. The

---

[1] For example, Defendant Wal-Mart's contention that, "Plaintiff attempted to cash the four $500 money orders at the Wal-Mart Store" is obviously disputed.

[2] For example, the propositions "Wal-Mart, Inc. is not a proper party to this lawsuit" and "Wal-Mart Stores East, LP admits that if a jury finds . . . in favor of Plaintiff and against the Wal-Mart Store in Raymore, Missouri, then Wal-Mart Stores East LP is the responsible party" are not statements of fact. The former is a legal conclusion and the latter is an offer to stipulate.

[3] While Plaintiff's Suggestions in Opposition to Wal-Mart's motion does not contain a section of additional uncontroverted facts as is customary, Plaintiff has arguably complied with Local Rule 56.1 by referencing the facts upon which she bases her opposition to the motion with specific citations to the record. In compiling the facts used to adjudicate the motions for summary judgment, the Court has included her references to these relevant material facts which are supported by the record.

nephew was, and is, living with Fisher in her Belton home. This money order was genuine and was a birthday gift to Fisher's nephew.

Fisher thought someone she did not know sending her four $500 money orders was suspicious. She decided to go to Wal-Mart to cash the money order from Clarene Banks and to see about the other money orders. Fisher, her infant son, her boyfriend, her nephew, and her cousin all went to Wal-Mart store 319.

When Fisher arrived at the store associate Kristie Keen ("Keen") was working at the customer service desk. Fisher approached the customer service desk and spoke with her. Fisher presented Keen with the genuine $100 money order and Keen cashed it.

Fisher then presented the four fraudulent money orders. Exactly what happened next is hotly disputed, but for summary judgment purposes the Court holds Fisher told Keen that she had unexpectedly received the money orders in the mail, and Fisher asked Keen if the money orders were real. She did not intend to cash them, she only wanted to know if they were real or fake.

Keen recognized the money orders were fraudulent. Keen called Wal-Mart's Asset Protection Manager, Wanda Gonzalez, and told her that she had money orders at the front desk she needed to see. Keri Christeson, another Wal-Mart asset protection employee, was also called-up to the front of the store. Christeson believes she was told there was a lady trying to cash fake money orders. Christeson subsequently called the Raymore Police Department and had the following conversation with the police dispatcher:

> Dispatcher: Police Department, Officer Stevie.
>
> Christeson: Oh, hi, it's Keri at the Raymore Free-Mart. Hey, I have a girl at the service desk trying to cash some fake money orders and, uh, officers wanted me to call em the next time this happened so they could get a little bit more information.

4

| | |
|---|---|
| Dispatcher: | Allllll righty, are you guys going to keep her up there til we get there? |
| Christeson: | We're going to try. |
| Dispatcher: | All right, I'll let em know. |
| Christeson: | OK, bye. |
| Dispatcher: | Bye. |

Officer James F. Junkin of the Raymore Police Department happened to be in the Wal-Mart parking lot when the call came from the Raymore police dispatcher stating a person was trying to pass fraudulent checks at the Wal-Mart service desk. After receiving the call from dispatch, Officer Junkin stayed in his police car and waited until people matching the description given by Wal-Mart to the police dispatcher exited the store. Officer Junkin stopped Fisher, her infant son, her boyfriend, her nephew, and her cousin and asked them if they had had any dealings at the customer service desk. Officer Junkin told them they could not leave until the issues were straightened out.

At some point Sergeant Dale Loney of the Raymore Police Department arrived in the parking lot. He went inside the store and investigated the complaint. He was told by Wal-Mart employees that Fisher had attempted to cash counterfeit money orders. Christeson confirmed that Fisher was the individual being questioned by Officer Junkin in the parking lot. The Wal-Mart employees Sergeant Loney has worked with in the past have been reliable informants as to suspected crimes at the Wal-Mart store.

Based on the fraudulent money orders and the statements from Wal-Mart employees that Fisher had attempted to cash them, Sergeant Loney formed a belief that Fisher had committed a crime. He then directed Officer Junkin to arrest Fisher for attempting to commit an offense.

5

When Sergeant Loney told Officer Junkin to arrest Fisher he believed probable cause existed to arrest her.

During the arrest, neither officer yelled, shouted, or raised a voice at Fisher. Neither officer used curse words, racial epithets, or any other inappropriate language towards Fisher or anyone else at the scene. Other than placing handcuffs on Fisher and assisting her into Officer Junkin's police car, there was no physical touching between Fisher and the officers.

While being arrested Fisher denied she had done anything wrong. This was not an uncommon occurrence for the officers; people they arrested often denied doing anything wrong, even when they had.

Wal-Mart store number 319 or its associates never signed a complaint in the underlying criminal matter, but there was a store policy of assisting in the prosecution of every arrest made at the store.

The Raymore City Prosecutor subsequently decided to prosecute Fisher for attempting to cash the counterfeit money orders.

Keen was the only Wal-Mart associate with whom Plaintiff spoke on January 9, 2008. Keen never accused Fisher of committing a crime and did not treat her differently because of her race.

Fisher does not allege that either Wal-Mart Defendant restrained her against her will, or that any Wal-Mart associate physically restrained or detained her, or prevented her from leaving the store premises. Fisher claims no physical injury from this incident, has not sought any medical treatment, and has no plans to seek medical treatment for her alleged injuries. Fisher's family members, the police, and Wal-Mart employees think less of her as a result of this episode.

**Discussion**

**A.      Plaintiff cannot establish a claim for false imprisonment.**

In Count I Plaintiff alleges that Wal-Mart committed the common law tort of false imprisonment. To establish a prima facie case of false imprisonment a plaintiff must show (1) that she was restrained against her will, and (2) that this restraint was unlawful. *Ivy v. Wal-Mart Stores, Inc.*, 777 S.W.2d 682, 683-84 (Mo. Ct. App. 1989). Under Missouri law "one who merely gives police wrong information concerning a criminal offense, even though such misinformation results in an arrest, is not liable in an action for false arrest and imprisonment, 'unless he goes beyond such point and instigates the arrest by suggestion and encouragement and countenances it.'" *Conley v. Commerce Bank of St. Charles*, 599 S.W.2d 48, 50 (Mo. Ct. App. 1980) (quoting *Gerald v. Caterers, Inc.*, 382 S.W.2d 740, 744 (Mo. Ct. App. 1964)). Unfortunately, there is "no fixed test to determine" what constitutes "instigation." *Conley*, 599 S.W.2d at 50. In *Conley* the court held that a bank security guard who, based on information provided by other bank employees, telephoned the police out of a mistaken belief that the plaintiff was about to rob the bank, had not instigated the plaintiff's arrest.

In the present case Plaintiff was restrained against her will by the Raymore Police officers, but that this restraint was not unlawful because (as discussed in section D) there was probable cause for her arrest. Even if Fisher's restraint were illegal, however, the Court finds as a matter of law that the Wal-Mart cannot be liable for false imprisonment because there is no evidence that they did anything more than, at worst, provide incorrect information. Viewed in the light most favorable to the Plaintiff, the record shows that after Fisher cashed the legitimate money order, she presented the counterfeit money orders and asked if they were real. The Wal-Mart employees then called the police, and the police arrested her. There is no evidence that any

7

Wal-Mart employee *knowingly* gave false information to the police or did anything else to "instigate" her arrest under Missouri law. Accordingly, the Court grants Wal-Mart summary judgment on Count I.

**B.     Plaintiff's slander claim is barred by qualified privilege.**

Count II alleges a claim for common law slander against the Wal-Mart Defendants. Libel and slander both fall under the generic heading of defamation. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 308 (Mo 1993); Black's Law Dictionary (8th ed. 2004) (defining "defamation" as a "written or oral statement that damages another's reputation"). The elements of defamation are (1) publication; (2) of a defamatory statement; (3) that identifies the plaintiff; (4) that is false; (5) that is published with the requisite degree of fault; and (6) that damages the plaintiff's reputation. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000). Because Fisher is a private individual, not a public figure, the requisite degree of fault is negligence. *Id.* To recover punitive damages Fisher must prove actual malice, which is defined as making a false statement with knowledge that it was false, or making a false statement with reckless disregard for whether it was true when the defendant had serious doubt as to whether it was true. *Id.*

Wal-Mart argues that Fisher cannot show that the employees made any false statements, or, if they did, that such statements damaged Fisher's reputation. Wal-Mart also argues that Fisher's claim is barred by a qualified privilege. Fisher responds that Wal-Mart, through its employee Keri Christeson, made a false statement to the police, namely "we have a girl here trying to pass fake money orders," and that her reputation was damaged.

Under Missouri law "whether language is defamatory and actionable is a question of law to be decided by the court, and the court must determine whether a statement claimed to be

8
Case 4:08-cv-00512-DGK   Document 127   Filed 07/06/09   Page 8 of 16

slanderous is reasonably capable of defamatory meaning." *Rockwood Bank v. Gaia*, 170 F.3d 833, 841 (8th Cir. 1998) (applying Missouri law). In making this determination the court must decide "whether the communication reasonably conveyed the meaning ascribed to it by plaintiff and, if so, whether the meaning was defamatory in character." *Id*. (quoting *Ampleman v. Schwewppe*, 972 S.W.2d 329, 331 (Mo. Ct. App. 1998). A defendant's subjective belief in the truth of the defamatory statement is not a defense to liability. *Overcast* 11 S.W.3d at 73.

The Court holds that a jury could find that Christeson's statement was a false statement and that it was defamatory. If a jury believed Fisher's testimony it could find she was not attempting to cash the fake money orders but simply trying to determine if they were genuine, and that Wal-mart defamed her by negligently accusing her of committing a crime. Likewise, for purposes of summary judgment only, the Court holds that Sergeant Loney's deposition testimony is sufficient evidence from which a jury could find damage to Fisher's reputation. Thus Plaintiff has made a prima facie case of slander.

But that is not the end of the matter. Missouri follows the common law in providing three general defenses to a defamation claim. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996). Under the common law, truth is an absolute defense, certain statements are absolutely privileged, and certain statements enjoy a conditional or qualified privilege. *Id.*

A communication is qualifiedly privileged if it is made in good-faith upon a subject matter which the declarant has an interest or in reference to which he has a duty, to a person having a corresponding interest or duty, even though it contains matter which absent such privilege would be actionable. *Id.* at 244. The rationale is that a qualified privilege arises from the necessity for full and unrestricted communication concerning the matter in which the parties have the interest or duty. *Deckard v. O'Reilly Automotive, Inc.*, 31 S.W.3d 6, 16 (Mo. Ct. App.

2000). Whether a qualified privilege exists is a matter of law to be decided by the trial court. *Rice*, 919 S.W.2d at 244. The circumstances and relationships that give rise to such a qualified privilege are also a matter of law to be determined by the trial court. *Deckard,* 31 S.W.3d at 16.

If the defendant establishes a qualified privilege the plaintiff can overcome it by proving by clear and convincing evidence that either (1) the defendant made the defamatory statement in bad-faith or with actual malice, or (2) that the statement made exceeded the requirements of the situation. *Id.* To prove actual malice the plaintiff must show the statement was made with knowledge that it was false or with reckless disregard for the truth at a time when the defendant had serious doubts as to whether it was true.[4] *Id.*

Wal-Mart argues that Christeson's statement that "we have a girl here trying to pass fake money orders" is qualifiedly privileged because it was part of Christeson's job duties to prevent monetary loss by reporting illegal activity to the police. Consequently, while her assessment of the situation may have been wrong, her statement could not give rise to liability for slander. Defendants suggest this case is analogous to *Sheridan v. City of Des Moines*, No. 4-00CV-90024, 2000 WL 25626707 (S.D. Iowa Aug. 10, 2000). In *Sheridan* the plaintiff presented a counterfeit ten thousand dollar bill to a bank teller and asked her if it was real or not. *Id.* at *1. The teller notified a bank officer who in turn called the police, claiming that the plaintiff was trying to exchange the bill for smaller currency. *Id.* The police arrested the plaintiff, who subsequently sued the bank for slander. *Id.* The trial court dismissed the slander claim, holding the bank officer's statement to the police was qualifiedly privileged. *Id.* at *3.

---

[4] This is the same standard used to determine whether the plaintiff can recover punitive damages. *See Overcast*, 11 S.W.3d at 70.

Fisher concedes Wal-Mart has the right to argue the qualified privilege issue to the jury, but appears to deny the privilege applies as a matter of law.[5] Fisher also argues that any qualified privilege is overcome by a showing of malice, which she contends may be inferred from Christeson's "disparate treatment" of her, as evidenced by Christeson's tone of voice and references to Fisher as a "girl" and a thief.

The Court agrees with Wal-Mart that Christeson had a duty to her employer to help prevent fraud and so her statement to the police dispatcher, while perhaps factually incorrect, is qualifiedly privileged.

With respect to Plaintiff's ability to overcome the privilege, while Christeson's statement was perhaps flippant, there is no evidence that it was knowingly false or that Christeson had any doubts about its truth when she uttered it, thus there is no bad-faith or malice here. The Court also rejects Plaintiff's assertion that racial animus on Christeson's party can be inferred from her use of the word "girl" here. Not every use of the word "girl" amounts to racial derogration, *Whitley v. Peer Review Systems, Inc.*, 221 F.3d 1053, 1056 (8th Cir. 2000), and the Court finds no animus here. When Christeson said "girl" she meant female; as a matter of law there is no way a rational fact-finder could conclude otherwise.

The Court also finds Christeson's statement did not exceed the requirements of the situation: She was calling to report that a female customer was trying to cash some fraudulent money orders, and she told the dispatcher, "Hey, I have a girl at the service desk trying to cash some fake money orders," which is a simple, straightforward statement that does not exceed the requirements of the situation.

---

[5] "The determination of the application of the defense of qualified privilege as a question of law is different than a determination that as a matter of law the evidence establishes that the statement was qualifiedly privileged." Resp. at ¶ 15.

Therefore, while Fisher has established a prima facie claim of defamation for Christeson's statement, the statement is protected by a qualified privilege which Fisher cannot overcome. Accordingly, the Court grants Wal-Mart summary judgment on Count II.

**C.    Plaintiff concedes she cannot establish a prima facie claim of intentional infliction of emotional distress.**

Count III asserts a claim for intentional infliction of emotion distress. In her response, Plaintiff concedes that she cannot maintain a claim of intentional infliction of emotional distress. The Court grants Wal-Mart summary judgment on Count III.

**D.    Plaintiff cannot establish any section 1983 violation because the officers had probable cause to arrest Fisher.**

To prevail on her section 1983 unlawful arrest claim Plaintiff must show that the Police Defendants were (1) acting under color of state law, and (2) arrested Plaintiff (3) without probable cause. *Peterson v. City of Plymouth*, 60 F.3d 469, 473 (8th Cir. 1995). The parties do not dispute that the Police Defendants were acting under color of state law or that they arrested Fisher, the question is whether there was probable cause for her arrest.

Whether the officers had probable cause is a question of law for the court to decide. *Id.* at 475. Officers have probable cause to make an arrest "if, at the moment the arrest was made, 'the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing'" that each Plaintiff had committed or was committing a crime. *Id.* at 473 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Put another way, "[p]robable cause exists when the totality of the circumstances shows that a prudent person would believe the arrestee has committed a crime." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). In determining whether probable cause exists, Eighth
12

Circuit law gives the police "substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Washington*, 109 F.3d 349, 465 (8th Cir. 1997). Probable cause is determined at the moment an arrest is made; later developed facts are irrelevant to the analysis. *Amrine*, 522 F.3d at 832.

The record here establishes that the officers had probable cause to arrest Fisher: Wal-Mart called the Raymore Police Department and reported that someone was attempting to cash fraudulent money orders; Wal-Mart employees told Sergeant Loney that Fisher attempted to cash the fraudulent money orders; the money orders were in fact fraudulent; and Sergeant Loney could believe these employees because they had previously given him reliable information and he had no reason to believe that they were incorrect or lying.

The fact that Fisher denied doing anything wrong, or would have told Sergeant Loney if he had asked that she was only trying to see if the money orders were real, does not change the analysis. The fact that Sergeant Loney did not believe Fisher's story does not mean he was "without question contemptuous and malicious" or "incompetent" as Plaintiff's counsel suggests. Police officers routinely discount what suspects tell them because suspects routinely lie to them. Sergeant Loney ordered Fisher's arrest because he reasonably believed—based on a reasonably thorough investigation which turned up reasonably trustworthy information—that Fisher had attempted to cash counterfeit money orders. The fact that she denied the allegations was not enough to oblige Sergeant Loney to ignore evidence indicating she had tried to pass the counterfeit money orders, or force him to conduct a mini-trial in the Wal-Mart parking lot before her could arrest her. While the evidence he relied on turned out to be mistaken, this does not mean Sergeant Loney lacked probable cause to arrest Fisher or should otherwise be liable under section 1983.

13
Case 4:08-cv-00512-DGK   Document 127   Filed 07/06/09   Page 13 of 16

Finally, the Court rejects the claim that if Sergeant Loney had performed additional "minimal" investigation he would have exonerated Fisher. Because this is a motion for summary judgment the Court must find that Fisher told Keen that she did not want to cash the money orders, she only wanted to know if they were real or fake. But in truth this assertion is hotly disputed; Keen's emphatic deposition testimony is that Fisher did in fact attempt to cash the four fraudulent money orders. So if Sergeant Loney had investigated further before making his decision he would have only confirmed what he already knew, namely, the Wal-Mart employees were accusing Fisher of trying to cash the fraudulent orders and she was denying it.

Accordingly, the Court GRANTS Police Defendants summary judgment on Count IV.

### E. Plaintiff cannot establish a prima facie claim of intentional infliction of emotional distress.

Count V of the Complaint asserts a claim for malicious prosecution. Malicious prosecution actions are not favored under Missouri law. *Sanders v. Daniel Intn'l Corp.*, 682 S.W.2d 803, 806 (Mo. banc 1984). "There is almost universal agreement that sound public policy dictates that the law should encourage the uncovering and prosecution of crime. Any 'policy that discourages citizens from reporting crime or aiding in prosecution would be undesirable and detrimental to society in general.'" *Id.* (quoting *Cates v. Eddy*, 669 P.2d 912, 917-18 (Wyo. 1983). Consequently, Missouri law requires "strict proof of each element of the tort," which are (1) commencement of a prosecution against the plaintiff, (2) that was instigated by the defendant, (3) termination of the proceeding in favor of the plaintiff, (4) lack of probable cause for the prosecution, (5) defendant's conduct was actuated by malice, and (6) plaintiff was damaged. *Sanders*, 682 S.W.2d at 806-807.

Wal-Mart suggests that the Plaintiff cannot prove that it instigated her arrest, or that there was a lack of probable cause for her prosecution, or that Wal-Marts' conduct was motivated by malice. Because it is dispositive, the Court takes-up this last argument first.

In order to be liable for malicious prosecution a defendant must have initiated the proceedings "'primarily for a purpose other than that of bringing an offender to justice.'" *Cassady v. Dillard Dept. Stores*, 167 F.3d 1215, 1219 (8th Cir. 1999) (quoting *Sanders*, 682 S.W.2d at 814). To demonstrate the requisite legal malice, the plaintiff must show either that the defendant had "an illegitimate motive for the prosecution, or that it knowingly acted with flagrant disregard" for the defendant's rights "so that an improper motive may be inferred." *Cassady*, 167 F.3d at 1219.[6] In making this determination the court's focus is on the defendant's state of mind, not the plaintiff's. *Id.* at 1219-20.

Wal-Mart argues that even if it did instigate Plaintiff's prosecution, she is unable to show that Wal-Mart did so out of malice. Wal-Mart's employees called the police because they had been warned of a counterfeit money-order scheme, they had been trained to identify counterfeit money-orders, and Fisher was in possession of counterfeit money-orders, not because of an improper motive. Plaintiff responds that a jury can find malice from Christeson's telling the police that Fisher was trying to cash the money-orders instead of telling the police that Fisher just wanted to know if they were real or not, by Christeson referring to Fisher as a "girl," and by Wal-Mart's policy of prosecuting, or assisting in the prosecution of, every arrest at the store.[7]

---

[6] Throughout her brief Plaintiff argues that MAI instructions supply the relevant legal standards; in this instance it is instruction number 16.01(2), which defines legal malice as ". . . acting intentionally with an evil motive or acting with reckless indifference to the rights of others or acting primarily for a purpose other than bringing an offender to justice." The Court will apply the standard articulated by the Missouri Supreme Court and Eighth Circuit caselaw, not a standard promulgated by an instruction committee designed to be read to a jury of laypersons.

[7] Plaintiff makes other allegations—that store employees did not ask Fisher politely about what happened at the customer service desk, and that the store was trying to send a "no exceptions, get tough" policy to the public or minority groups—which are not properly part of the factual record, therefore the Court did not consider these allegations in reaching its decision.

There is a difference between speculation and inference, and while the record might allow one to speculate whether Wal-Mart acted out of malice, it will not sustain a fair inference that Wal-Mart acted out of malice. The Court finds a jury could reasonably infer from the record only that some sort of miscommunication occurred between Keen and Christeson about what Fisher was trying to do with the money orders and that Christeson's statement to the police was a by-product of that miscommunication, or that when told that Fisher appeared at the customer service desk with fraudulent money orders Christeson jumped to the conclusion that she was committing a crime. But there is no evidence here that any Wal-Mart employees acted with an improper motive, or that any Wal-Mart employee *knowingly* acted with flagrant disregard for Fisher's rights so that a jury could infer an improper motive, such as racial animus, was at work. There is no evidence, for example, that any Wal-Mart employee was out to get Fisher or had any reason to dislike her. There is also no evidence that Christeson realized that what she was telling the police dispatcher was not true, or that Keen purposefully told Christeson a lie in the hope that she would call the police and get Fisher arrested.

Accordingly, the Court finds Plaintiff cannot show that Wal-Marts' conduct was actuated by malice and so grants Defendants summary judgment on Count V.

## Conclusion

For the foregoing reasons the pending motions for summary judgment (Doc. 87, 103) are GRANTED.

**IT IS SO ORDERED.**

Date:  July 6, 2009                          /s/ Greg Kays
                                                                           GREG KAYS, JUDGE
                                                                           UNITED STATES DISTRICT COURT